**Archie PELTZMAN,
Plaintiff-Appellant,**

v.

**CENTRAL GULF LINES, INC.,
Defendant-Appellee.**

**No. 831, Docket 75–7004.**

United States Court of Appeals,
Second Circuit.

Argued April 28, 1975.

Decided July 24, 1975.
Certiorari Denied Jan. 19, 1976.
See 96 S.Ct. 857.

Archie Peltzman, plaintiff-appellant pro se.

Richard P. Lerner, New York City (Lorenz, Finn, Giardino & Lambos, New York City, of counsel), for defendant-appellee.

Before MOORE and MANSFIELD, Circuit Judges, and HOLDEN, District Judge.*

PER CURIAM:

This is the second appeal by Archie Peltzman, a marine radio operator, from an order of the Southern District of New York granting summary judgment dismissing his suit for damages against his employer, Central Gulf Lines, Inc., for wrongful discharge. Peltzman had been discharged pursuant to a union security provision in an outstanding agreement between his employer and the American Radio Association, AFL–CIO ("ARA" herein), the collective bargaining representative for marine radio operators employed by Central Gulf, on the ground that he was not a member of that union. The ARA had declined to clear Peltzman for permanent employment because he had been expelled as a member and had refused to pay a $2,000 initiation fee required to regain union membership.

Upon the prior appeal we upheld the validity of the union's security clause, which required that within 30 days of the date of hiring for a permanent position an employee become and remain a member of ARA, and disposed of most of the arguments advanced by Peltzman. *Peltzman v. Central Gulf Lines, Inc.,* 497 F.2d 332 (2d Cir. 1974). However, we were unable to gather from the district court's opinion whether the initiation fee "was uniformly required by the union constitution and by-laws, and was regularly demanded of those in his [Peltzman's] position." We could not therefore determine whether the union security clause had been properly invoked by Peltzman's employer. It was also unclear whether Peltzman had remained a

---

* Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

member of the union despite his admitted failure to pay dues arrearages.

Upon remand to determine whether genuine issues existed with respect to these matters Judge Knapp, after a hearing, concluded that no such issues were presented and that the defendant was entitled upon the undisputed facts to dismissal of the complaint as a matter of law.[1] We affirm.

It is uncontroverted that following the United States Coast Guard's wrongful refusal to issue a radio officer's license to Peltzman in 1949, which prevented him from continuing to act as a radio officer, Peltzman ceased paying his dues to ARA, of which he had been a member. Under the provisions of the ARA Constitution, Art. XII, § 1(c), Peltzman was in 1950 automatically suspended for non-payment of dues for six months. In 1952 the ARA Constitution was amended to provide that members who failed for six months to pay dues owed by them should automatically be expelled from union membership and that an expelled member might regain membership in the union only upon compliance with the Constitution's "Permit Card" provision, which required the expelled member to seek re-entry as a new member, paying the initiation fee required of new members.

It is undisputed that from 1949 on Peltzman did not pay his dues. In reply to the foregoing provisions of the ARA Constitution, under which he was automatically suspended and later expelled, Peltzman contended in the district court that he was on "inactive status." However, he offered no evidence to support this contention, which was refuted by a provision of the ARA Constitution, Art. XII, § 1(h), which entitled him to such a status only upon payment of all outstanding dues arrearages. Peltzman had admittedly not paid dues for many months prior to his alleged assumption of inactive status.

The evidence was equally clear and uncontroverted that the provisions of the ARA Constitution obligating those who had been suspended or expelled from membership to pay an initiation fee in order to obtain re-entry had been applied uniformly and in a non-discriminatory fashion. Of 10 individuals who had been expelled or suspended for non-payment of dues and who had subsequently returned to their former occupation as marine radio operators, all but one were required to pay the full ARA initiation fee as a prerequisite to obtaining membership in the union. One individual, Edward Homer, was reinstated upon payment of $1,000, which amounted to one-half of the initiation fee, pursuant to settlement of his threatened lawsuit against the ARA. For the reasons stated by Judge Knapp, Homer's case was distinguishable on several grounds from that of Peltzman, one ground being that Homer had not originally been suspended from the ARA but had received a withdrawal card, leaving the union as a member in good standing. All other individuals who had been expelled or suspended for non-payment of dues, however, had been required to pay the ARA initiation fee in order to regain membership.

The district court thus properly found that there was no genuine issue of material fact with respect to Peltzman's non-membership in the ARA and the non-discriminatory enforcement of the pertinent provisions of the ARA Constitution. Having upheld the validity of the union security clause in the ARA contract governing Peltsman's employment, we accordingly affirm the district court's grant of summary judgment dismissing the complaint.

---

1. In view of Judge Knapp's conclusions it became unnecessary to consider whether Central Gulf Lines was also entitled to summary judgment on the ground that Peltzman had failed to exhaust contractual grievance procedures.