**Alonzo LINDER, et al., Plaintiffs,**

v.

**Ole M. BERGE, et al., Defendants.**

**Civ. A. No. 82–0820 S.**

United States District Court, D. Rhode Island.

Nov. 4, 1983.

Gunning, Lafazia & Gnys, Robert W. Smith, Edwards & Angell, John B. Rosenquest, III, Providence, R.I., Harold R. Henderson, Jr., Joanna L. Moorhead, Washington, D.C., for plaintiffs.

Highsaw & Mahoney, Clinton J. Miller, III, Washington, D.C., Lovett, Morgera, Schefrin & Gallogly, Aram Schefrin, Providence, R.I., Louis P. Malone, III, Detroit, Mich., for defendants.

## MEMORANDUM AND ORDER

SELYA, District Judge.

This action was originally brought by six former employees of National Railroad Passenger Corporation ("Amtrak") against their ex-employer and divers union defendants. The claims against all defendants other than Amtrak were heretofore dismissed. *Linder v. Berge*, 567 F.Supp. 913 (D.R.I.1983) *("Linder I")*. The remaining defendant has now filed a motion for judgment on the pleadings.

Under Fed.R.Civ.P. 12(c), such a motion results in early assessment of the merits of a claim; accordingly, well-pleaded facts in the opposing party's pleadings must be taken as true and all reasonable inferences favorable to that party must be drawn therefrom. *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980). Essentially, although made after the complaint has been answered, such a motion (when made by a defendant) is to be treated as a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted. *See, e.g., Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir.1980); *Schy v. Susquehanna Corp.*, 419 F.2d 1112 (7th Cir.), *cert. denied* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). *Cf. Gallogly v. Bakery & Confectionary Workers Int'l. Union*, 180 F.Supp. 778, 781 n. 2 (D.R.I.1960). A limitations defense is a classic example of an issue which may, in a proper case, be determined by a Rule 12(c) motion. *See, e.g., Craig v. Western & Southern Indemnity Co.*, 119 F.2d 591 (6th Cir.1941); *Hemingway v. Shull*, 286 F.Supp. 243 (D.S.C.1968).

■ The factual predicate of this action is adequately set forth in *Linder I,* and it would be pleonastic to repeat it here. There, the court granted a Rule 12(b)(6) motion filed by the union defendants, on the authority of *DelCostello v. International Brotherhood of Teamsters,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The court was careful to note at that time that Amtrak had not adopted the dismissal motion; and that, arguably, the suit against Amtrak "may not be foreclosed by *DelCostello.*" *Linder I,* 567 F.Supp. at 917 n. 4.

Amtrak's instant motion is on limitations grounds, and implicates both *Linder I* and the Supreme Court's opinion in *DelCostello.* The plaintiffs, rather than making the slightest effort to differentiate their claims against Amtrak from their claims against the union defendants, have abjured the filing of a brief in opposition, choosing to rely instead solely on the arguments briefed and rejected in connection with *Linder I.*[1]

The jurisdictional statement contained in plaintiffs' complaint invokes, *inter alia,* the Railway Labor Act, 45 U.S.C. §§ 151 et seq. ("RLA"). Complaint ¶ 8. The complaint proceeds to recite the existence of a collective bargaining agreement ("Agreement"), *id.* ¶ 10; the hiring of the plaintiffs by Amtrak in mid-1976, *id.* ¶ 11; the plaintiffs' entitlement to the benefits of the Agreement, *id.* ¶ 13; the misclassification of five of the plaintiffs vis-a-vis the Agreement and the resultant harm to them, *id.* ¶ 14; their lay-offs in late 1976, *id.* ¶ 21; and the allegedly improper failure to recall the plaintiffs when the work recommenced. *Id.* ¶¶ 23–24.

Sundry discriminatory practices are cited, most of which are laid at the joint doorstep of the employer and the union defendants. *E.g., id.* ¶¶ 19, 25, 27. The capstone of the complaint, insofar as the claims against Amtrak are concerned, is an accusation of "concerted actions" between Amtrak and the union defendants, *id.* ¶¶ 30–31. The complaint further avers that Amtrak's conduct violated the RLA, "the Interstate Commerce Act, 29 U.S.C. § 5 et seq.,"[2] and the Agreement. *Id.* ¶¶ 36–37.

Lastly, it should be mentioned that plaintiffs anticipate, and attempt to avoid, a challenge based on failure to exhaust remedies under the Agreement or before the Railroad Adjustment Board, by citing to the fruitless effort of a similarly-situated fellow employee to invoke these anodynes. *Id.* ¶¶ 28–29.

It is plain that, while *DelCostello* constricted the reach of *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), it did not sound *Hoosier's* death knell. In a "straightforward breach of contract suit under § 301" (of the Labor Management Relations Act 29 U.S.C. §§ 185 et seq.), *Hoosier* retains its former vitality. *DelCostello,* —— U.S. at —— ——, 103 S.Ct. at 2289–91, 76 L.Ed.2d at 488–89. Yet, the plaintiffs here make no argument that they have—or seek to maintain—a simple contract action. Their complaint presents claims against the employer and the union defendants which, as framed, are "inextricably interdependent." *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 66, 101 S.Ct. 1559, 1566, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring), quoted in *DelCostello,* —— U.S. at ——, 103 S.Ct. at 2291, 76 L.Ed.2d at 489. This symbiosis appears equally compelling in the RLA context. *Cf. Czosek v. O'Mara,* 397 U.S. 25, 28–29, 90 S.Ct. 770, 772–773, 25 L.Ed.2d 21 (1970). From a fair reading of the charges as limned by the complaint, the case which these plaintiffs must prove is essentially the same against Amtrak as against the union. Thus, the case must in this posture be viewed as "a hybrid § 301/fair represen-

---

1. It is noteworthy that the earlier memorandum which the plaintiffs incorporate by reference as the basis for opposition to the instant motion was filed in advance of the *DelCostello* decision, and does not allude in any way to that seminal case.

2. The quoted reference has a phantasmagoric quality. Title 29, U.S.Code, does not contain the Interstate Commerce Act, nor any part thereof. The court is at a loss to make any sense of this reference; and therefore, has ignored it.

**282**

tation claim" within the meaning of *Del-Costello. Id.*

And, while it has been suggested that the limitations period may, even in such circumstances, vary with the identity of each defendant, *e.g., DelCostello,* —— U.S. at ——–——, 103 S.Ct. at 2294–95, 76 L.Ed.2d at 494–95 (Stevens, J., dissenting), the majority of the Court has characterized such a result as "unfortunate," and has plainly indicated a preference for the implementation of an identical limitations period governing both halves (i.e., worker v. employer and worker v. union) of a § 301/fair representation suit. *DelCostello,* —— U.S. at ——, n. 19, 103 S.Ct. at 2293 n. 19, 76 L.Ed.2d at 492 n. 19. In the wake of *DelCostello,* this philosophy has been applied by Judge Plunkett (albeit without extended discussion) on facts analogous to those presently *sub judice. See Schott v. Hotel-Motel Service Workers,* No. 82 C 6918 (N.D.Ill. July 28, 1983). In short, gauged by the plaintiffs' allegations, this is apparently a situation where the need for uniformity is compelling and "where its absence would threaten the smooth functioning of those consensual processes that federal labor law is chiefly designed to promote." *Hoosier,* 383 U.S. at 702, 86 S.Ct. at 1111.

For these reasons, and for the reasons set forth in *Linder I, DelCostello* forecloses the bringing of this suit more than five years after the fact, and Amtrak's motion for judgment on the pleadings must be granted.[3] The right is reserved to the plaintiffs, however, within 10 days from the date hereof, to move for leave to amend their complaint against Amtrak, annexing thereto a proposed amended complaint alleging particular facts (if any there be) sufficient to state a claim under *Hoosier* independent of the hybrid § 301/fair repre-

sentation claim presently set forth. In both the interests of justice and an abundance of caution, this is an opportunity which the court believes should be accorded to the plaintiffs, despite the court's skepticism as to the existence of an adequate independent factual predicate. After all, doubt, no matter how wellfounded or how deeply rooted, does not, in the absence of omniscience, rise to the level of certainty. If no such motion is filed within the period specified, or if such motion is filed and thereafter denied, judgment shall at such time enter for the defendant Amtrak in accordance with this decision.

*It is so ordered.*

---

**3.** This conclusion makes it unnecessary to address any of Amtrak's alternative arguments, or to consider the preclusive effect of expiration of the two year limitations period set forth in the RLA for lawsuits challenging decisions of the National Railroad Adjustment Board. 45 U.S.C. § 153 First (r). Indeed, given the track-side context of the dispute, that statute may well

usurp the six month limitations period of § 10(b) of the NLRA, 29 U.S.C. § 160, as the best available yardstick in railway workers' cases. But, since both the half-year and the two year period elapsed long before the instant action was initiated, the court elects to leave that question open for another day.